1   Benjamin W. Reeves (#025708)
2   SNELL & WILMER L.L.P.
    One Arizona Center
3   400 E. Van Buren, Suite 1900
    Phoenix, Arizona 85004-2202
4   Telephone: 602.382.6506
    Facsimile: 602.382.6070
5   E-Mail: breeves@swlaw.com
    Attorneys for Defendants 597 Broadway Realty,
6   LP, Shui Yee Lee, and Sabeth I. Siddique

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                      FOR THE DISTRICT OF ARIZONA

11

12  | LREP Arizona, LLC, a Texas limited | No. 2:16-cv-04015-DLR |
    | liability company, | |
13  | | **RULE 60 MOTION TO VACATE** |
    | Plaintiff, | **JUDGMENT** |
14  | | |
    | v. | (Oral Argument Requested) |
15  | | |
    | 597 Broadway Realty, LP, a New Jersey | |
16  | limited partnership; Shui Yee Lee; and | |
    | Sabeth Siddique, | |
17  | | |
    | Defendants. | |
18

19          Defendants, 597 Broadway Realty, LP ("**Broadway**"), Shui Yee Lee ("**Lee**"), and

20  Sabeth Siddique ("**Siddique**") (collectively, "**Defendants**"), move the Court to set aside

21  and vacate the "Judgment in a Civil Case" (Doc. 18) (the "**Judgment**") due to Plaintiff's

22  failure to serve Defendants. As explained in more detail below, Defendants have valid

23  defenses to the validity and enforceability of the underlying contracts that gave rise to the

24  entry of the Judgment. By failing to serve Defendants, Plaintiff deprived Defendants of

25  the opportunity to assert those defenses. Under these circumstances, Rule 60(b), Fed. R.

26  Civ. P., authorizes the Court to set aside and vacate the Judgment. This Motion is

27  supported by the following Memorandum of Points of Authorities.

28

4821-8831-5214

1

<div align="center"><u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u></div>

2

**I.**   <u>**RELEVANT FACTS**</u>

3

    **A.**   <u>**Plaintiff Loans $4,000,000 to G Company**</u>

4

      Plaintiff, LREP Arizona, LLC ("**Plaintiff**" or "**LREP**"), alleges that Defendants

5

guarantied payment of a $4,000,000 loan (the "**Loan**") made by Plaintiff to an entity

6

named G Companies Management, LLC (the "**Borrower**" or "**G Company**").  (Doc. 1 at

7

¶ 7).  Significantly, none of the Defendants own any interest in the Borrower, Lee's and

8

Siddique's respective spouses did not sign the guaranties at issue,[1] and the record fails to

9

disclose any direct benefit that Defendants received from the Loan itself.[2]

10

      Although the Loan was for $4,000,000 in principal, Plaintiff only funded

11

$3,400,000, but withheld the rest as:  (i) a $240,000 origination fee, and (ii) three months'

12

pre-paid interest at a rate of $120,000 per month.  (Doc. 1 at Ex. A (the "**Loan**

13

**Agreement**") at ¶¶ 1.1, 1.6, and 1.7).  In addition, the Loan accrued interest at the contract

14

rate of 36% and default rate of 46%.  (Doc. 1 at ¶ 20).  Arizona law governs all of the

15

Loan documents.

16

      According to the Complaint, Borrower defaulted on the Loan on February 18, 2016

17

(Doc. 1 at ¶ 8), and Plaintiff foreclosed on its real property collateral on July 8, 2016

18

(Doc. 1 at ¶ 9).  Plaintiff did not provide Defendants with notice of the foreclosure.

19

Nevertheless, Plaintiff acquired the real property collateral by crediting a mere $315,000

20

against the Loan.[3]

21

    **B.**   <u>**The Parties Execute a Forbearance Agreement**</u>

22

      On or around July 14, 2016, the parties executed a "Forbearance and Consent

23

Agreement" (Doc. 1 at Ex. 7) (the "**Forbearance Agreement**").  In the Forbearance

24

---

25

[1]    The spouses' failure to sign the guaranties may preclude Plaintiff from reaching those spouses' assets or Lee's and Siddique's assets.  *See* A.R.S. § 25-214(C)(2).

26

[2]    *See* "Declaration of Shui Yee Lee" (the "**Lee Dec.**") at ¶¶ 3-4, attached as <u>Exhibit A</u>; *see also* "Declaration of Sabeth Siddique" (the "**Siddique Dec.**") at ¶¶ 3-4, attached as

27

<u>Exhibit B</u>.

[3]    Defendants believe the real property collateral has a significantly higher value than

28

$315,000.  *See* Lee Dec. at ¶ 5; *see also* Siddique Dec. at ¶ 5.

4821-8831-5214

<div style="writing-mode: vertical-rl">Snell & Wilmer<br>L.L.P.<br>LAW OFFICES<br>One Arizona Center, 400 E. Van Buren, Suite 1900<br>Phoenix, Arizona 85004-2202<br>602.382.6000</div>

Agreement, Defendants purported to, among other things:  (i) agree to toll the ninety (90) day period to file a deficiency action under Ariz. Rev. Stat. ("**A.R.S.**") § 33-814, and (ii) consent to the filing of the "Stipulated Motion for Entry of Judgment" (Doc. 3) (the "**Stipulated Motion**").  Significantly, the Forbearance Agreement does not memorialize any agreement by Defendants to waive service of process.[4]

### C.   Plaintiff Files This Deficiency Action But Fails to Serve Defendants

On November 18, 2016, one-hundred and thirty-three (133) days after Plaintiff foreclosed on its real property collateral, Plaintiff filed its "Complaint" (Doc. 1) (the "**Complaint**") and Stipulated Motion.  Plaintiff never served either document—or any other document filed in this case—on Defendants, and Defendants never agreed to waive service of process.[5]

### D.   After Several Months of *Ex Parte* Litigation, this Court Enters Judgment

On December 14, 2016, Magistrate Fine issued a recommendation that the Court deny the Stipulated Motion, without prejudice (Doc. 6), which LREP opposed (Doc. 9) (the "**Objection**").  Again, Plaintiff failed to serve Defendants with the Objection, which deprived Defendants of any opportunity to support Magistrate Fine's recommendation.[6]

On March 13, 2017, Plaintiff filed a motion to continue the case on the inactive calendar, claiming that the parties had reached an agreement to pay the indebtedness. (Doc. 11).  Even though the parties were in discussions at this time, Plaintiff never informed Defendants that this suit was pending.  Nevertheless, between July 14 and July 27, 2016, Defendants paid Plaintiff $150,000 (Doc. 13, 2:16-18) and after March 20, 2017, Defendants made an additional $1,744,117.91 payment to Plaintiff (Doc. 13, 3:16-20).  Even though Defendants made these payments, Plaintiff never informed Defendants of the existence of this suit.

---

[4]   *See* Lee Dec. at ¶ 9; *see also* Siddique Dec. at ¶ 9.

[5]   *See* Lee Dec. at ¶ 10; *see also* Siddique Dec. at ¶ 10.

[6]   *See* Lee Dec. at ¶ 10; *see also* Siddique Dec. at ¶ 10.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

4821-8831-5214

1    On May 24, 2017, Plaintiff moved to reinstate the case (Doc. 13).  By "Order"

2    dated July 25, 2017, this Court sustained Plaintiff's *ex parte*[7] Objection (Doc. 18) to

3    Magistrate Fine's recommendation, and entered the Judgment the same day (Doc. 19).

    **E.**    **Defendants Learn of This Action Through Post-Judgment Collections**

5    The next month, LREP filed several applications for writs of garnishment (Docs.

6    19, 21, 23, 25).  The first time Defendants learned of this action was when a garnishee

7    answered the writ (Doc. 27) and froze Defendant Lee's retirement investment savings

8    accounts—which are exempt from execution under A.R.S. § 33-1126(B).[8]

**II.**    **LEGAL ARGUMENT**

    **A.**    **Introduction**

11    "Defendants must be served in accordance with Rule 4(d)[, Fed. R. Civ. P.], or

12    there is no personal jurisdiction."  *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir.

13    1982).[9]  In other words, "[a] person is not bound by a judgment in a litigation to which he

14    or she has not been made a party by service of process."  *Mason v. Genisco Tech. Corp.*,

15    960 F.2d 849, 851 (9th Cir. 1992) (agreeing that an earlier judgment was "void" because

16    the plaintiff "did not properly serve the complaint"); *see also In re Cossio*, 163 B.R. 150,

17    154 (B.A.P. 9th Cir. 1994), *aff'd*, 56 F.3d 70 (9th Cir. 1995) ("When it is found that there

18    has been defective service of process, the judgment is void[.]") (citing *Mason*).  Plaintiff's

19    failure to serve the Complaint, therefore, renders the Judgment entered in this case void

20    and authorizes this Court to grant Defendants relief pursuant to Rule 60(b)(1), (b)(4),

21    and/or (b)(6), Fed. R. Civ. P.[10]

---

[7]    Even if this Court determines that Defendants somehow waived service of the Complaint, they could not have agreed to waive service of the Objection since no one could have anticipated that an Objection was required.

[8]    *See* Lee Dec. at ¶ 11; *see also* Siddique Dec. at ¶ 11.

[9]    Although a defendant may waive service, *id.*, there is no evidence in this record that Defendants did so here.

[10]    In fact, Plaintiff's failure to serve Defendants within 90 days after filing the Complaint may authorize this Court to dismiss this action, in its entirety, under Rule 4(m), Fed. R. Civ. P.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

### B.  Legal Standard for Rule 60(b) Relief

Courts in the Ninth Circuit analyze three factors in deciding whether to set aside a judgment:  "(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).  In analyzing these factors, the Court exercises its discretion.  *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985).  However, since "Rule 60(b) is remedial in nature…[it] must be liberally applied" such that "[w]henever it is reasonably possible, cases should be decided upon their merits."  *Id.*  "As a consequence…doubt, if any, should be resolved in favor of the motion to set aside the judgment…."  *Id.* (internal quotations omitted).  Defendants address all three factors below.

#### 1.  LREP Will Not Be Prejudiced if the Judgment is Vacated

LREP will not be prejudiced if the Court vacates the Judgment.  To be prejudicial, there must be some greater harm than simply delaying resolution of the case.  *Smith v. Smith,* No. CV-13-02611-PHX-DGCO, 2014 WL 1651961, at *2 (D. Ariz. Apr. 23, 2014) (discussing motion to vacate entry of default, citing to and using same standard as a Rule 60(b) motion).  The standard is whether Plaintiff's ability to pursue its claim will be hindered.  *Id.; see also Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).

In *Falk*, a landlord obtained a default eviction judgment against a tenant, who later moved to set the judgment aside.  The landlord argued that vacating the judgment would prejudice it because it had already leased the space to a new tenant.  The Ninth Circuit held that the landlord would not be prejudiced because "[t]he trial court…has the power to impose conditions on the scope of the reopened suit to prevent prejudice."  *Falk*, 739 F.2d at 463.  Likewise, here, the Court can impose whatever conditions it believes are necessary to avoid prejudice to LREP.  Since LREP's Judgment accrues interest at the rate of 46% and Defendants have already paid ~$2,000,000 to Plaintiff, it will be difficult for Plaintiff to argue that it will be harmed by any delay.  Regardless, by proceeding *ex parte*,

4821-8831-5214

1    LREP acted rashly and impliedly assumed the risk that Defendants would seek to set aside

2    the Judgment.  The Court should find no prejudice to Plaintiff in light of LREP's conduct.

3                    **2.    Defendants May Assert Five Meritorious Defenses**

4            Defendants can assert at least five colorable defenses to liability under the

5    guaranties.  *United States v. Aguilar*, 782 F.3d 1101, 1107 (9th Cir. 2015) ("'All that is

6    necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that,

7    if true, would constitute a defense: 'the question whether the factual allegation [i]s true' is

8    not to be determined by the court when it decides the motion to set aside the default.

9    Rather, that question 'would be the subject of the later litigation.'") (quoting *United States*

10   *v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1094 (9th Cir. 2010)

11   (alteration in the original)).

12           First, Plaintiff filed the Complaint more than ninety (90) days after the foreclosure

13   sale in contravention of the statute of repose set forth in A.R.S. § 33-814.  Accordingly,

14   Plaintiff's deficiency action against Defendants expired as a matter of law prior to the

15   filing of the Complaint.  Second, at a minimum, Defendants are entitled to a "fair market

16   value" hearing under A.R.S. § 33-814 to determine the appropriate credit that the

17   foreclosed property should be given against the amount of the Judgment. Third, the

18   guaranty contracts themselves fail for lack of consideration since Defendants derived no

19   benefit from the Loan.  Fourth, the Loan terms are objectively unconscionable and,

20   therefore, unenforceable under Arizona law.  Last, Defendants are not subject to personal

21   jurisdiction in this District.  Defendants explain the basis for each defense below.

22                 **a.    Plaintiff's Complaint is Barred as Untimely as the Arizona
                           Anti-Deficiency Statute is a Statute of Repose and Cannot
23                         be Tolled**

24           A.R.S. § 33-814 requires that a foreclosing lender file a deficiency action within 90

25   days after a trustee's sale occurs.  Here, the foreclosure sale took place on July 8, 2016.

26   (Doc. 1 at ¶ 9).  The deficiency action, however, was not filed until November 18, 2016

27   (Doc. 1)—133 days after the foreclosure sale occurred.  This is clearly outside the 90 day

28   period that the parties agreed would apply.  Accordingly, LREP is precluded from

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

4821-8831-5214

1    obtaining any judgment against Defendants based on an alleged deficiency in the

2    outstanding loan amount after the foreclosure sale.

3         LREP will likely argue the parties agreed to toll this period in the Forbearance

4    Agreement, which provides, in pertinent part, as follows:

5         Guarantors agree that this Agreement shall toll during the Term, the
     Lender's legal requirement to commence an action to recover the balance of
6         the Indebtedness after the Sales, including, but not limited to the
     requirements set forth in A.R.S. Section 33-814, and waive any defense
7         under the deficiency laws to the collection of the Indebtedness from the
     Guarantors.

8

9    (Doc. 1 at Ex. 7 at ¶ 2).  However, this 90 day period in ARS § 33-814 is a statute of

10   repose that cannot be tolled as a matter of law.  *Valley National Bank of Arizona v.*

11   *Kohlhase*, 182 Ariz. 436, 439, 897 P.2d 738, 741 (Ct. App. 1995); *Resolution Trust Corp.*

12   *v. Olson*, 768 F. Supp. 283, 286 (D. Ariz. 1991).  Thus, Plaintiff's tardiness bars its claim

13   against Defendants as a matter of law notwithstanding the Forbearance Agreement.

14        Statutes of repose limit the time in which a cause of action may be brought. *United*

15   *States v. Rezzonico*, 32 F. Supp. 2d 1112, 1113 (D. Ariz. 1998).  As contrasted with

16   statutes of limitations, which extinguish the ability to proceed with an accrued cause of

17   action, statutes of repose extinguish the actual action itself.  *Id.*  Once a statute of repose

18   has expired, a valid cause of action no longer exists.[11]  *Id.*  Accordingly, statutes of repose

19   may not be tolled.  *Sch. Dist. No. 1J. Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d

20   1255, 1259 (9th Cir. 1993) (statute of repose embodies public policy of creating definite

21   end to possible future litigation for past actions); *see also Warfield v. Alaniz*, 453 F. Supp.

22   2d 1118, 1130 (D. Ariz. 2006).

23        By establishing a fixed time period, a statute of repose implements a "legislative

24   decisio[n] that as a matter of policy there should be a specific time beyond which a

25

26   ───────────────
     [11]     A statute of repose is intended "to establish a limit beyond which no suit may be
27   pursued," and "sets a period of time within which claims must be brought regardless of
     when the cause of action may accrue."  *Evans Withycombe, Inc. v. Western Innovations,*
     *Inc.*, 215 Ariz. 237, 240, 159 P.3d 547, 550 (Ct. App. 2006) (quoting *Maycock v.*
28   *Asilomar Dev., Inc.,* 207 Ariz. 495, 500, 88 P.3d 565, 570 (Ct. App. 2004)).

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

1  defendant should no longer be subjected to protracted liability." *CTS Corp. v.*
2  *Waldburger*, 134 S.Ct. 2175, 2183 (2014); *Moore v. Browning*, 203 Ariz. 102, 110, 50
3  P.3d 852, 860 (Ct. App. 2002) (declining to apply equitable tolling due to the absence of
4  "any [legislative] intent to toll the statute of repose"); *see also Lampf, Pleva, Lipkind,*
5  *Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991) (repose provision is therefore
6  equivalent to "a cutoff" and "absolute bar" on defendant's temporal liability).
7  Consequently, a statute of repose cannot be tolled unless the legislature expresses a clear
8  intent to allow tolling the statute of repose. *Warfield*, 453 F. Supp. 2d at 1130; *Maricopa*
9  *County v. American Pipe & Constr. Co*., 303 F. Supp. 77, 85 (D. Ariz. 1969); *Moore*, 203
10  Ariz. at 110-11, 50 P.3d at 860-61.  No such legislative intent appears anywhere in A.R.S.
11  § 33-814.  Accordingly, LREP's ability to file the instant case expired, as a matter of law,
12  notwithstanding the Forbearance Agreement.
13      Because LREP failed to file the deficiency action against Defendants within the 90-
14  day limitation set forth in section 33-814(A) and that period may not be tolled as a matter
15  of law, Plaintiff's deficiency action has been extinguished.  If this Court vacates the
16  Judgment, Defendants can assert this as a meritorious defense to the enforceability of the
17  underlying deficiency.
18      **b.   A.R.S. § 33-814 Requires a Fair Market Value Hearing**
19      Even if the time to file a deficiency action had not expired (which it did), A.R.S. §
20  33-814 also entitles Defendants to a "fair market value" hearing to determine the
21  appropriate value of the foreclosed property.  Here, Plaintiff foreclosed on its real
22  property collateral, but only credited $315,000 against the debt.  (Doc. 1 at ¶ 11).
23  Defendants believe that the real property is worth significantly more than $315,000.[12]
24  Arizona law (which the parties agree governs the guaranties) entitles Defendants to a fair
25  market value hearing to test the sufficiency of Plaintiff's credit bid.
26
27
28  _____
   [12]      *See* Lee Dec. at ¶ 5; *see also* Siddique Dec. at ¶ 5.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

4821-8831-5214

Arizona's "fair market value" statute, A.R.S. § 33-814(A), "protects against artificially inflated deficiencies by preventing windfalls resulting from below-market credit bids." *CSA 13-101 Loop, LLC v. Loop 101, LLC*, 236 Ariz. 410, 413, 341 P.3d 452, 455 (2014). In *CSA*, the Supreme Court of Arizona determined that the availability of a "fair market value" hearing held so great of a public policy importance that the right to a hearing "cannot be prospectively waived"—even by a sophisticated commercial borrower. *Id.* Here, the guaranties contain no express contractual waivers of the right to a "fair market value" hearing. Accordingly, Defendants are entitled to an evidentiary hearing to determine the appropriate credit that Plaintiff should have been given against the Judgment as a result of the foreclosure. If the Court agrees with Defendants that the property is worth significantly more than the $315,000 that Plaintiff bid for the property, that fact alone may significantly reduce, or eliminate entirely, Plaintiff's asserted deficiency.

### c.       The Guaranties Fail for Lack of Consideration

Arizona recognizes that a contract may fail for lack of consideration. *Morgan v. Bruce*, 76 Ariz. 121, 125, 259 P.2d 558, 561 (1953) (ordering rescission of contract "on the ground of total failure of consideration"). Generally, "without consideration, [a] guaranty is unenforceable." *Faunus Grp. Int'l, Inc. v. Ramsoondar*, No. 13CV6927 HB, 2014 WL 2038884, at *2 (S.D.N.Y. May 16, 2014).

Consideration is a benefit to the promisor or a loss or detriment to the promisee. *Phil Bramsen Distrib., Inc. v. Mastroni*, 151 Ariz. 194, 199, 726 P.2d 610, 615 (Ct. App. 1986) (citing *K-Line Builders, Inc. v. First Federal Savings & Loan Association*, 139 Ariz. 209, 213, 677 P.2d 1317, 1321 (Ct. App. 1983)). There is no consideration for a promise where no benefit is conferred on the promisor or a detriment suffered by the promisee. *K-Line Builders, Inc.,* 139 Ariz. at 212, 677 P.2d at 1320. In other words, "[t]he party claiming breach must show that, in return for the promise, it conferred some benefit the other party was not already entitled to receive, or suffered some prejudice it

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

was not already bound to endure."  *Kremen v. Cohen*, 337 F.3d 1024, 1028 (9th Cir. 2003) (noting that consideration "must be something of real value") (internal quotation omitted).

Here, Defendants received no consideration for the guaranty.  Defendants were not parties to the Loan between LREP and G Companies, are not owners of G Companies, and derived no personal benefit from the Loan proceeds.[13]  In a typical case, a guarantor is a principal of the borrower and that, alone, constitutes sufficient consideration.  Here, Defendants' estrangement from the Borrower takes this out of the ordinary fact-pattern. Defendants' promise to pay, therefore, is not supported by consideration.

### d.   The Loan Terms are Unconscionable and Unenforceable

The aggressive terms of the Loan are unconscionable on their face and, therefore, unenforceable under Arizona law.  "If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract...."  Restatement (Second) of Contracts § 208; *Goodman v. Newzona Inv. Co.*, 101 Ariz. 470, 473-74, 421 P.2d 318, 321-22 (1966) (courts do not enforce contracts that are illegal or against public policy); *Dobson Bay Club II DD, LLC v. La Sonrisa de Siena, LLC*, 242 Ariz. 108, 114-15, 393 P.3d 449, 456-57 (2017) (courts will refuse to enforce contract terms that are unconscionable).  Unconscionability includes both procedural unconscionability and substantive unconscionability."  *Phoenix Baptist Hosp. & Medical Ctr., Inc. v. Aiken,* 179 Ariz. 289, 293, 877 P.2d 1345, 1349 (Ct. App. 1994).  "Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed at the time the contract was made."  *Coup v. Scottsdale Plaza Resort, LLC*, 823 F. Supp. 2d 931, 950 (D. Ariz. 2011) (citing *Cooper v. QC Financial Services, Inc.,* 503 F. Supp. 2d 1266, 1279 (D. Ariz. 2007)).  "The following indicate substantive unconscionability: contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity."  *Id.*

In *Dobson Bay*, 242 Ariz. 108, 393 P.3d at 456, the Supreme Court of Arizona

---

[13]     *See* Lee Dec. at ¶¶ 3-4; *see also* Siddique Dec. at ¶¶ 3-4.

1   recently held that excessive loan charges in a commercial loan contract constituted an

2   "unreasonable and…unenforceable penalty."  The *Dobson Bay* case represents a

3   significant departure from previous Arizona law, which generally honored commercial

4   parties' freedom to contract.  Plaintiff appears to include aggressive fees, late charges, and

5   default interest in its Judgment amount similar to those struck down in *Dobson Bay*.

6   Indeed, Plaintiff's Judgment approaches ~$4,700,000 even though Plaintiff only funded

7   $3,400,000 to Borrower.[14]  Despite the similarities between the commercial loan terms in

8   *Dobson Bay* and those at issue here, Plaintiff did not attempt to distinguish, or even cite

9   to, *Dobson Bay*, in its Objection (Doc. 10).  Had Defendants been afforded notice and an

10  opportunity to respond to the Objection, Defendants could have, and would have, raised

11  the *Dobson Bay* case with the Court at that time, such that the Court may have reached a

12  different conclusion in its Order (Doc. 17).

13      If the Court vacates the Judgment, Defendants will have a valid defense as to the

14  amount of the debt that is actually enforceable under Arizona law in light of the *Dobson*

15  *Bay* case.  By failing to serve Defendants with the Objection (or any other filing in this

16  case), Plaintiff deprived Defendants the opportunity to raise these issues prior to entry of

17  the Judgment.  In fairness to Defendants, this Court should—at a minimum—set aside the

18  Judgment to address the impact of *Dobson Bay* on the enforceability of the Loan and its

19  terms against Defendants.

20          **e.**     **Defendants are Not Subject to Personal Jurisdiction**

21      Defendants may also assert the meritorious defense that this Court does not have

22  personal jurisdiction over them.  Plaintiff is a Texas limited liability company, and

23  Defendants are a New Jersey limited partnership and two non-Arizona individuals.  The

24  *only* potential contact that Defendants have with Arizona is a venue provision in the

25

26  [14]   Notably absent from the record is any accounting of the charges that make up the
27  principal balance of the Loan included in the Judgment.  Indeed, as Plaintiff itself
    recognizes, Defendants voluntarily paid Plaintiff $150,000 between June and July 2016,
    and $1,744,117.91 in or around March 2017.  Thus, the principal balance of the Judgment
28  is, or should be, significantly less than the ~$4.7 million as stated in the Judgment.

1    guaranty they signed.  But exercising personal jurisdiction on that basis alone would not

2    comport with the "traditional notions of fair play and substantial justice" that are the

3    foundation of personal jurisdiction.  *International Shoe Co. v. Washington*, 326 U.S. 310,

4    316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

5         Here, Defendants signed a guaranty that referred to a loan secured by real property

6    in California.  The lender is a Texas entity.  The real property that is the subject of the

7    transaction is located in California.  None of the Defendants are in Arizona, and none of

8    the effects of their signing a guaranty will be felt in Arizona.  To evaluate whether the

9    Court has personal jurisdiction based on such "attenuated" contacts, *Burger King Corp. v.*

10   *Rudzewicz*, 471 U.S. 462, 475 (1985), the Court must "use a highly realistic approach that

11   recognizes that a contract is ordinarily but an intermediate step serving to tip up prior

12   business negotiations with future consequences which themselves are the real object of the

13   business transaction."  *Id.* at 479.  Those "future consequences" of the guaranty that "are

14   the real object of the business transaction" have no relation to Arizona.  If Defendants are

15   required to pay under the guaranty, they will be New Jersey residents paying a Texas

16   entity.  Such potential future action does not flow from Defendants having "performed

17   some type of affirmative conduct which allows or promotes the transaction of business

18   within the forum state."  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008)

19   (single sale made on eBay did not constitute minimum contacts between Wisconsin

20   resident and California).

21        The only contact with Arizona—for Defendants—is a venue provision in the

22   guaranty.  Based on that language alone, which has no logical connection to the

23   underlying property or the guaranty, Defendants would not "reasonably anticipate being

24   haled into court" in Arizona.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286,

25   297 (1980).  Moving forward would violate the longstanding jurisprudence on specific

26   personal jurisdiction, which considers three factors:

27        (1) The non-resident defendant must purposefully direct his activities or
     consummate some transaction with the forum or resident thereof; or perform
28        some act by which he purposefully avails himself of the privilege of

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or related to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (2004).  Any claim to personal jurisdiction over Defendants fails on all three factors.

First, Defendants did not purposefully direct any activity toward Arizona or an Arizona resident.  The transaction involved a guaranty for a loan that was given by a lender in Texas to a California borrower secured by real property located in California. The transaction has no relation to Arizona, and no future activities need to take place in Arizona.  Defendants did not avail themselves of the protections of Arizona law because there is nothing related to the contract that requires activity in Arizona.  Because there is no purposeful direction or availment, there is no personal jurisdiction.

Second, the claim here is related to a guaranty.  Defendants have no "forum-related activities."  *Id.*  Any activity by Defendants—such as payment on the guaranty—would be between them and the lender, which is a Texas entity.

Third, exercising personal jurisdiction over Defendants would not be reasonable here because Arizona has no interest in the California real property or the parties' underlying transaction.  Indeed, Defendants simply have no connection with Arizona, and asserting personal jurisdiction solely on the basis of a venue provision alone would frustrate the constitutional due process principles that undergird personal jurisdiction.

The Court should grant Defendants relief from the Judgment so that they may file a motion under Rule 12(b)(3), Fed. R. Civ. P., to contest the assertion of personal jurisdiction over them.

### 3.    Defendants Are Not Culpable For Any Delay

Under the last prong of the Rule 60(b) analysis, Court's generally look to whether a defendant *intentionally* failed to answer a complaint after receiving actual or constructive

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

1   notice of it in making the determination of whether the defendant engaged in culpable

2   conduct.  *Dennison v. Ryan*, No. CV-11-2293-PHX-SRB, 2012 WL 4006710, at *2 (D.

3   Ariz. Aug. 7, 2012), *report and recommendation adopted*, No. CV11-2293-PHX-SRB,

4   2012 WL 4006699 (D. Ariz. Sept. 12, 2012).  As discussed above, Plaintiff never served

5   Defendants with the summons or Complaint.   Additionally, Defendants never received

6   notice of Plaintiff's Objection.  Defendants had not yet appeared in the case and,

7   therefore, LREP needed to serve them in a manner outside the electronic filing system.

8   LREP failed to do this.  Consequently, Defendants were not culpable in the conduct

9   leading to the entry of the Judgment.  This, in addition to the fact that Defendants have

10  meritorious defenses, demonstrates that the Court should grant this motion.

11  **III.   CONCLUSION**

12          Plaintiff failed to serve Defendants with the Complaint, Stipulated Motion, or

13  Objection.  That, in and of itself, voids the Judgment.  Had Plaintiff effected service,

14  Defendants could have raised meritorious defenses to, among other things, the validity,

15  enforceability, and amount of the debt.  Indeed, the effect of (i) the A.R.S. § 33-814

16  statute of repose, (ii) the recent Supreme Court of Arizona *Dobson Bay* case discussed

17  above, and (iii) Defendants' right to a fair market value hearing, all significantly impact

18  Plaintiff's asserted right to recover a deficiency and the allowable amount of that

19  deficiency.  Plaintiff deprived Defendants of the right to raise these issues prior to entry of

20  Judgment.  Accordingly, in fairness, the Court should set aside the Judgment to allow the

21  Court to consider the propriety of these items before Plaintiff seizes Defendants' assets.

22

23

24

25

26

27

28

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1   DATED this 8th day of September, 2017.

2                                          SNELL & WILMER L.L.P.

3

4                                   By: /s/ Benjamin W. Reeves
                                        Benjamin W. Reeves
5                                       One Arizona Center
                                        400 E. Van Buren, Suite 1900
6                                       Phoenix, Arizona  85004-2202
                                        Attorneys for 597 Broadway Realty,
7                                       LP, Shui Yee Lee, and Sabeth I.
                                        Siddique
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

1

## **CERTIFICATE OF SERVICE**

2

3      I hereby certify that on September 8, 2017, I electronically transmitted the attached

document to the Clerk's Office using the CM/ECF System for filing which electronically

4

transmits a Notice of Electronic Filing to the following CM/ECF registrants:

5

6                          Randy A. McCaskill
                      McCaskill Law & Advocacy, PLLC
                          Post Office Box 13684
7                    Scottsdale, Arizona  85267-3684
                          Attorneys for Plaintiff

8

/s/ Jennifer Thomes

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4821-8831-5214