Warren J. Stapleton, No. 018646
Joseph N. Roth, No. 025725
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
wstapleton@omlaw.com
jroth@omlaw.com

Attorneys for Plaintiff/Counterdefendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LREP Arizona, LLC, a Texas limited liability company, | No. CV-16-04015-PHX-DLR |
| Plaintiff/Counterdefendant, | **MOTION TO DISMISS COUNTERCLAIM** |
| vs. | |
| 597 Broadway Realty, LP, a New Jersey limited partnership; Shui Yee Lee; and Sabeth Siddique, | |
| Defendants/Counterclaimants. | |

Plaintiff LREP Arizona, LLC ("LREP") moves to dismiss Defendants' Counterclaim pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.[1]

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   Introduction**

Defendants' counterclaim is part of a hail-Mary to avoid paying on their obligations. Defendants—highly sophisticated financiers and investors—entered into a high-risk, short-term business arrangement and agreed to serve as guarantors on a $4 million loan. Now that the risk they agreed to has materialized, they are doing all they can to avoid payment. The gist of Defendants' counterclaim (ECF 61 at 5-13) is that their guaranties are unenforceable because, they allege, Plaintiff LREP Arizona, LLC coaxed Defendants into signing by telling them that property that also served as collateral was worth significantly more than the indebtedness and so the guaranties would never be called upon.

*First*, the counterclaim must be dismissed in its entirety. Shortly **after** the sale of the collateral property and **after** LREP began going after the guaranties, the parties entered into a new agreement for new consideration under which the Defendants gave **express consent** to all allegations and relief claimed in LREP's lawsuit in exchange for LREP's forbearance from suing at that time. (The "**Forbearance Agreement**," *see* ECF 9-2 at 26-32.) Defendants "agree[d] to admit all of the allegations of the [l]awsuit, waive any defenses thereto, and consent to the entry of judgment against them." (ECF 9-2 at 28, § 9.) Defendants have waived any defense to enforcement of the amounts owed and are bound by the terms of the Forbearance Agreement.

*Second*, the Forbearance Agreement aside, Defendants have completely failed to allege a viable claim for fraudulent inducement (Count 3). Defendants' allegation that

---
[1] Pursuant to LRCiv 12.1(c), counsel certifies that counsel for the parties conferred via telephone and email regarding the issues raised in the motion, and that the parties were unable to agree that Defendants' pleading was curable by an amendment. Accordingly, Plaintiff is proceeding with this motion.

1

they were told inflated property values is not an allegation of false representation of fact that can support a fraud claim. *Gould v. M&I Marshall & Ilsley Bank*, 860 F. Supp. 2d 985, 990 (D. Ariz. 2012). And Defendants cannot have justifiably relied on any such representation because Defendants expressly warranted that they knew all they wanted to know about the borrower's financial condition, and discharged LREP from having a duty to inform them about the borrower. (ECF 1-1 at 39, § 22.) In addition, LREP did not have a duty to disclose the information Defendants allege was concealed from them. Finally, the fraud claim is generic, vague, and incomplete under Rule 9(b). Count 3 should also be dismissed for these separate reasons.

## II. Background facts as alleged in the counterclaims.[2]

### A. Defendants guaranteed a $4 million, high-risk business loan that was also secured by a parcel the primary borrower owned.

Defendants are the guarantors of a $4 million loan made by LREP to non-party G Companies Management, LLC. (ECF 61 at 2, ¶7.) The loan was secured by property owned by the borrower (the "Property") and by Defendants' guaranties (referred to in the singular as the "Guaranty"). (*Id.*)[3] Defendants concede that they each executed the "Continuing Guaranty" that is contained within Exhibit A to the Complaint. (*See* ECF 61 at 9, ¶ 25.) The Guaranty documents were attached as exhibits to the Complaint and are located at ECF 1-1 at 36-48.

The loan was made to further fund the borrower's business ventures—in other words, a high-risk private business loan amongst sophisticated players. (*See* ECF 1-1

---

[2] Although a motion to dismiss assumes the well-pleaded facts are true, courts may consider the "materials incorporated" into the claim "by reference, and matters of which the court may take judicial notice." *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008); *Toranto v. Jaffurs*, 297 F. Supp. 3d 1073, 1084 (S.D. Cal. 2018) (court may take judicial notice of "documents relied upon but not attached to the complaint when authenticity is not contested").

[3] The terms of the continuing guarantees are materially identical; therefore, this motion refers to and cites to the provisions of a single Guaranty but should be assumed to be referring to both guaranties unless noted otherwise.

(Loan and Security Agreement) at 2, Recital A.)  LREP made the loan "in reliance on" the Property as collateral and "the personal guarantees of each guarantor," including that the guarantors demonstrated significant financial wherewithal to adequately secure such a substantial loan.  (*See id*. at 2, Recital B; ECF 1-1 at 42-43 (showing Defendant Yee net worth of more than $25 million).)

Because the arrangement is between sophisticated parties, the Guaranty contains a broad integration, "no reliance" clause stating that the "Guaranty sets forth the entire agreement of Lender and Guarantor . . . and supersedes all prior . . . representations by Lender to Guarantor."  (*Id*. at 39, § 18.)  The Guaranty also contains broad waiver of surety rights, including a waiver of "recourse to any guaranty or suretyship defenses."  (*Id*. at 37-38, § 9.)

In addition, the Guaranty includes a separate section entitled, "Inducement of Lender."  (*Id*. at 39, § 22.)  That provision states that the Guarantor—not LREP— represents and warrants that Guarantor "is and will continue to be fully informed about all aspects of the financial condition and business affairs of Borrower . . . and Guarantor . . . waives and fully discharges" LREP from providing such information. (*Id*.)

Finally, the Guaranty provides that, in the event of a borrower default, LREP would "first pursue its remedies against Borrower (e.g., by the execution against the Property) prior to seeking its remedies against Guarantor."  (*Id*. at 37, § 8.)

**B.     The loan was not paid and LREP, the lender, began collection efforts.**

The borrower defaulted on the loan in February 2016, prompting LREP to accelerate the indebtedness.  (ECF 1 at 3, ¶ 8; ECF 61 at 2, ¶ 8.)  LREP thereafter pursued collection against the Property first, as required in the Guaranty, and ultimately compelled a trustee's sale on July 8, 2016.  (ECF 1 at 3, ¶ 9; ECF 61 at 2, ¶ 9.)  Despite there being a public auction for the trustee's sale, there was little interest in the Property, and LREP acquired the property for a credit bid of $315,000.  (ECF 61 at 9, ¶ 28.)

3

**C.    LREP and Defendants enter into a new agreement under which Defendants agree to the amount of payment and waive all right to contest the obligation, resulting in the stipulated judgment.**

After the foreclosure, there was a substantial amount of indebtedness left owing to LREP.  LREP therefore exercised its right to pursue enforcement of the guaranties. (ECF 61 at 9, ¶¶ 29-32.)  LREP "notified Guarantors that it intend[ed] to file a lawsuit against the Guarantors."  Defendants, however, wished to delay the lawsuit and the parties agreed to the Forbearance Agreement.  (*See* ECF 9-2 at 26-32.)  Defendants concede that they executed the Forbearance Agreement shortly after the Property sale. (ECF 61 at 9, ¶ 29.)  Indeed, the Recitals in the Forbearance Agreement lay out the details about the foreclosure, including that "the Property was sold to the highest bidder for the sum of $315,000.00."  (ECF 9-2 at 26.)

In exchange for LREP delaying suit and certain other consideration (including a "[p]artial [w]aiver of [d]efault [i]nterest," (*id.* at 28, § 7), Defendants, among other things, agreed to:

- "[W]aive any defense under the deficiency laws to the collection of the Indebtedness from Guarantors," including the protections of § 33-814 (*Id.* at 27, § 2);
- In the event of a default, consent to the filing of a pre-prepared lawsuit attached to the agreement (*id*. at 28, § 9);
- "[C]onsent to the filing of the Stipulated Motion for Entry of Judgment and the Order of Judgment" (*id*).

The Forbearance Agreement added, "[f]or sake of clarity, Guarantors agree to admit all of the allegations of the Lawsuit, waive any defenses thereto, and consent to the entry of judgment against them upon Guarantor's breach [of] their obligations . . . as set forth in this Agreement." *Id.*

4

Eventually, Defendants defaulted on their promise to fully pay, leading to the filing of the stipulated lawsuit, stipulated motion for judgment, and the stipulated proposed judgment.[4]  (ECF 1; ECF 3.)

### D. Defendants prevail under Rule 60 and bring this counterclaim to avoid their obligations.

After entry of the judgment, Defendants filed their Rule 60 motion to reopen, which the Court granted because the Court determined that Defendants had not waived service of process and, because there had not been service, the Court did not yet have jurisdiction to enter the judgment.  (ECF 51 at 3-4.)  Despite the promises made in the Forbearance Agreement to stipulate to the facts in the Complaint, Defendants then filed an answer and counterclaim.  (ECF 61 at 5-13.)

### E. Defendants counterclaim that they were fraudulently induced into signing guaranties.

Defendants allege that they are not liable for any amounts under the Guaranty and that any amounts they already paid should be paid back under theories of restitution (Count 1) and unjust enrichment (Count 2) based on allegations that they paid LREP on "false pretenses and without any obligation to do so."  (ECF 61 at 10, ¶ 37.)  The primary counterclaim is that Defendants were fraudulently induced into executing the Guaranties (Count 3).  (*Id.* at 10-12, ¶¶ 44-50.)

Defendants allege that LREP "concealed that they did not expect" borrowers to repay LREP's loan and that some portion of the loan proceeds did not get paid directly to the borrower.  Further, Defendants allege that LREP "exaggerated the value of the Property" that served as the only other security to the loan.  (*Id.* at 11, ¶ 45.)

---

[4] The parties agreed to further extensions and delays before LREP filed the stipulated motion for judgment.  In particular, after the lawsuit was filed, the parties entered into the "Consent and Payment Agreement" to keep the case on the inactive calendar so that Defendants would have time to obtain funds to pay the indebtedness.  For this further concession, Defendants again agreed to broad waivers of "any defense to their obligation to make payment to Lender."  (ECF 13-2 at 4.)

Defendants also contend that LREP "knew" that "the Property was not worth very much" and would leave the guarantors exposed. (*Id.* ¶ 46.)

### III.   Argument.

**A.   Defendants are bound by the Forbearance Agreement, in which they agree to all allegations in the complaint, waive any defenses, and consent to judgment.**

Dismissal of the entire counterclaim is required because, shortly after the sale of the Property, Defendants entered into the Forbearance Agreement and made a new promise to pay all indebtedness and waived "any defenses to" the indebtedness in exchange for LREP's delay in filing suit and other concessions.

A waiver is "the express, voluntary, intentional relinquishment of a known right." *Russo v. Barger*, 366 P.3d 577, 580 ¶ 12 (Ariz. Ct. App. 2016) (quoting *Am. Continental Life Ins. Co. v. Ranier Constr. Co.*, 607 P.2d 372, 374 (1980)).[5] Such an "express, voluntary, [and] intentional relinquishment" occurred as clearly as possible in the Forbearance Agreement. In that agreement, Defendants agreed to "admit all of the allegations of the [l]awsuit, waive any defenses thereto, and consent to the entry of judgment against them":

> 9.   **Default; Consent to Judgment.** If Guarantors default on the terms and conditions of this Agreement, including the failure to time make the Initial Payment or pay the balance of the Deficiency prior to the expiration of the Term, Lender shall file the Lawsuit in the form attached as Exhibit A hereto and Guarantors consent to the filing of the Stipulated Motion for Entry of Judgment and the Order of Judgment in the form attached as Exhibit B hereto. For sake of clarity, Guarantors agree to admit all of the allegations of the Lawsuit, waive any defenses thereto, and consent to the entry of judgment against them upon Guarantor's breach their obligations to timely make the Initial Payment and the Balance Payment as set forth in this Agreement. Guarantors shall sign and deliver Exhibit B to Lender at the time of this Agreement.

(ECF 9-2 at 28, § 9.) Defendants also agreed to the following waiver of any anti-deficiency protections that might apply, including time limits under A.R.S. § 33-814:

> 2.   **Tolling and Waiver.** Guarantors agree that this Agreement shall toll during the Term the Lender's legal requirement to commence an action to recover balance of the Indebtedness[1] after the Sales, including, but not limited to the requirements set forth in A.R.S. § 33-814, and waive any defense under the deficiency laws to the collection of the Indebtedness from Guarantors.

---

[5] The relevant agreements provide that Arizona law applies. (*See, e.g.*, ECF 9-2 (Forbearance Agreement) at 29, § 15.)

6

1  (*Id.* at 27, § 2.)  In exchange for Defendants' waivers and consents, their promise to pay
2  the indebtedness amount on a modified schedule (§§ 3-4), and a promise to restrict
3  movement of their assets (*id.* at 28, § 10), LREP agreed to delay filing suit for payment
4  (*id.* at 26, § 1), and to reduce the overall interest owed (*id.* at 28, § 7), among other
5  things.  Defendants do not dispute that they executed the Forbearance Agreement
6  following the Property sale in July 2016.  (ECF 61 at 9, ¶29.)

7  Each of Defendants' counterclaims are based on defenses to the Guaranty
8  obligation.  The Restitution and Unjust Enrichment claims (Counts 1 and 2) seek the
9  return of amounts they have paid already on the theory that their defenses to the
10  enforceability of the Guaranty are valid; the fraudulent inducement claim (Count 3)
11  raises another defense to the validity of the Guaranty.  Defendants waived each of these
12  as part of the post-Property-sale Forbearance Agreement.  Accordingly, the
13  counterclaims should be dismissed.

14  In their Rule 60 briefing (ECF 36), Defendants argued that some defenses could
15  not be waived, such as the 90-day time limit for deficiency actions found in A.R.S.
16  § 33-814(A).  Presumably, they will argue the same here to preserve their Restitution
17  and Unjust Enrichment claims.  This argument is wrong for several reasons.  First,
18  Arizona law only restricts the prospective waiver of certain anti-deficiency protections,
19  not post-foreclosure waivers.  In *CSA 13-101 Loop, LLC v. Loop 101, LLC*, the Arizona
20  Supreme Court held that a guarantor could not "prospectively" make an "advance
21  waiver" of the right to compel a fair market value determination under A.R.S. § 33-
22  814(A).  341 P.3d 452 (Ariz. 2014).  The restriction on waiver, however, was only on
23  *prospective* waiver (i.e., in the guaranty).  As the court explained, its "holding does not
24  preclude a borrower from agreeing, after a non-judicial foreclosure commences, not to
25  seek a fair market value determination."  *Id.* at 457 ¶ 24.  *See also Citibank (Ariz.) v.*
26  *Bhandhusavee*, 937 P.2d 356, 357 (Ariz. Ct. App. 1996) (holding that creditor with
27  stipulated judgment that included property as security was not barred from enforcing
28

7

the judgment through garnishment even though it did not seek deficiency within 90 days following a trustee sale on the collateral property).

This is precisely what happened in the Forbearance Agreement: after the trustee's sale, the parties entered into the new Forbearance Agreement, at a time when LREP was prepared to file suit.  Faced with an imminent suit, Defendants waived any defenses they may have had under the Guaranty to induce LREP to delay, all to LREP's detriment.  In exchange for that delay—agreed to less than **one week** after the trustee's sale, well within any deficiency period—Defendants agreed to the precise amount they owed, waived any defenses they may have had to the Guaranty, and agreed to waive any deficiency protections that would have otherwise applied to the Guaranty.  They are now liable under the Forbearance Agreement; they got the benefit of their bargain (the delay and other concessions) and are inequitably seeking to avoid the promises they made in exchange.  *Cf. Ariz. Bank & Tr. v. James R. Barrons Tr.*, 351 P.3d 1099, 1102 ¶ 10 (Ariz. Ct. App. 2015) ("Arizona law values the private ordering of commercial relationships and seeks to protect bargained-for expectations."); *see also Pi'Ikea, LLC v. Williamson*, 321 P.3d 449, 451 ¶ 9 (Ariz. Ct. App. 2014) ("[S]urety rights can be waived by contract.").

Second, the Forbearance Agreement also disposes of Defendants' fraudulent inducement claim for much the same reason: Defendants agreed to waive it *after* the Property sale, and thus *after* they would have learned of the factual basis for their allegation that they were falsely told that the Property had a much higher value, and that the borrower was not going to pay.  (ECF 61 at 7, ¶¶ 12-13.)  By nevertheless agreeing to the Forbearance Agreement (and subsequent extensions, and making payments), Defendants have waived whatever claim they may have had against LREP related to representations regarding the value of the Property.  *See W. All. Bank v. Jefferson*, 698 F. App'x 914, 914 (9th Cir. 2017) (holding that a "forbearance agreement" was a "pre-litigation settlement of the parties' impending legal dispute over whether [borrower] was liable notwithstanding the alleged forgery" and therefore the borrower "gave up the

8

right to contest his liability for the outstanding balance in return for independent consideration from the" lender); *see also Russell v. Pac. Motor Trucking Co.*, 672 F. App'x 629, 631 (9th Cir. 2016) (applying Missouri law for general proposition that "a party who, after discovering the defendant's alleged fraud, enters into subsequent agreements concerning the same subject matter waives the right to sue for fraud"); *cf. Cedar Ridge Trailer Sales, Inc. v. Nat'l Cmty Bank of N. J.*, 711 A.2d 338, 343-44 (N.J. Super. Ct. App. Div. 1998) (holding that forbearance agreement waived claims about which debtor knew and that "[f]orbearance from suit is adequate consideration to support a settlement agreement and bind the proposed defendant by its terms").

Third, the Restitution and Unjust Enrichment claims should also be dismissed because Defendants now allege that they have legal arguments that they were not obligated to make payments toward the indebtedness. An equitable unjust enrichment claim fails if there is an adequate remedy at law, and here Defendants are asserting a legal remedy – fraud in the inducement. *See Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 283 P.3d 45, 49 ¶ 10 (Ariz. Ct. App. 2012) (unjust enrichment requires proof of an "absence of a remedy provided by law") (citation omitted). Moreover, Defendants' unjust enrichment and restitution counterclaims seek a measure of damages based on quantum meruit. But, "[r]estitutionary relief is allowable only when it would be inequitable or unjust for defendant to retain the benefit without compensating plaintiff." *Creative Learning Sys., Inc. v. State*, 800 P.2d 50, 53 (Ariz. Ct. App. 1990) (citing *Murdock-Bryant Constr., Inc. v. Pearson*, 703 P.2d 1197, 1203 (Ariz. 1985)); *see also City of Sierra Vista v. Cochise Enters., Inc.,* 697 P.2d 1125, 1131 (Ariz. Ct. App. 1984) (stating that unjust enrichment occurs when a person has and retains benefits that in justice and equity belong to another). There is nothing unjust or inequitable about allowing Plaintiffs to keep the benefit of the partial repayment of funds that they loaned to the borrower.

**B.     The fraudulent inducement claim (Count 3) fails as a matter of law and is inadequately alleged.**

In addition to the post-sale Forbearance Agreement, which forecloses each count of the counterclaim entirely, the fraudulent inducement claim is also flawed for several other reasons.

Defendants claim they were fraudulently induced into signing the guaranties because of three allegations, two alleging concealment and one alleging a false representation: (1) that LREP concealed that LREP did not expect borrower to pay back the loan; (2) that LREP concealed that "much, if not most," of the loan did not get paid to borrower; and (3) that LREP falsely represented ("[g]rossly exaggerated") the Property's value. (ECF 61 at 11 ¶ 45.)

In all claims of fraudulent representation, the claimant must show that the claimant relied on a false representation of fact, and that the claimant had the "right to rely on it." *Echols v. Beauty Built Homes, Inc.*, 647 P.2d 629, 631 (Ariz. 1982) (listing fraud elements). And in claims based on concealment, the law requires either that the tortfeasor actively concealed or prevented the claimant from discovering information, or that the tortfeasor had a duty to disclose the information at issue. *See* Restatement (Second) of Torts § 550 (liability for concealment); § 551 (liability for nondisclosure).

Defendants' allegations show that they cannot satisfy their burden to prove these elements, and that their allegations are vague and generic in violation of Rule 9(b). The Court should dismiss Count 3 of the counterclaim for these reasons as well.

**1.     Defendants' alleged fraudulent representation on property value is not a representation of fact as required by law.**

Defendants' fraud claim fails as a matter of law because the purported false representation here cannot support a claim for fraud.

The crux of Defendants' fraud claim is that Defendants were told that the Property was worth substantially more than the indebtedness and therefore their guaranties would not be needed. (*See* ECF 61 at 7, ¶¶ 12-13.) Specifically, Defendants

10

allege that LREP "inspect[ed] the Property" and then represented "that the Property was worth as much as $27 million, and was conservatively worth at least $10 million." (*Id.* at 7-8, ¶¶ 14-16.)

This allegation cannot support a fraud claim. "An appraisal is an opinion of value and 'actionable fraud must be based upon a misrepresentation of material fact, and not upon an expression of opinion.'" *Gould*, 860 F. Supp. 2d at 990 (dismissing fraud claim in part because a representation of real estate value could not support a fraud claim) (citation omitted). A lender's "mere representation as to value" is not a representation as to past or existing fact, but one of future opinion "and will not support a claim for fraud" under Arizona law. *Frazier v. Sw. Sav. & Loan Ass'n*, 653 P.2d 362, 365 (Ariz. Ct. App. 1982). *See also* Restatement (Third) of Suretyship & Guaranty § 12 (stating that a guaranty may be voidable based on fraudulent misrepresentation or concealment of "facts," not opinion). Consequently, Defendants' fraud claim here must be dismissed because the core of the claim alleging that LREP overstated the Property value is not a "representation of fact" that can sustain a fraud claim.

Defendants throw in other allegations, presumably to try to plead around this glaring deficiency in their counterclaim. For instance, Defendants note that LREP made representations about the value of the Property after having conducted a "survey" or "inspect[ed]" it, implying that they must have learned more about the value of the Property and not shared it. (*See* ECF 61 at 7, ¶¶ 14-15.) These allegations do not change the result. A lender does not have "a duty to disclose to a borrower an appraisal it obtains as part of its own underwriting purposes." *Gould*, 860 F. Supp. 2d at 990. *See also* Restatement (Third) of Suretyship & Guaranty § 12, cmt. *f* (the Restatement "places no burden on the obligee to investigate for the benefit of the secondary obligor").

*Gould* is instructive. In that case, a lender had prepared its own appraisal but would not share its contents. 860 F. Supp. 2d at 987. The borrower alleged that he relied on representations about the appraisal in making a purchase, and also alleged that

11

the lender wrongly refused to disclose the contents of the appraisal (which would have revealed defects, says the plaintiff). *Id*. The court dismissed the fraud claims, finding both that the lender "did not have a duty to make disclosures to plaintiffs regarding the appraisal" and because "[a]n appraisal is an opinion of value," not an actionable misrepresentation of material fact. *Id*. at 990. The Court should do the same here.

### 2. Defendants cannot show that they had the right to rely on the alleged representations as a matter of law.

Even assuming Defendants allege actionable false representations of fact, the fraud claim in Count 3 is also legally flawed because the allegations on their face fail to show that Defendants had a right to rely on representations about the borrower's property or ability to pay the loan. *See Echols*, 647 P.2d at 631 (even if a false representation is made, a claimant must still prove he had a "right to rely on it").

Defendants expressly agreed that they would **not** have a legal right to rely on representations about the borrower's financial condition **and** that LREP was discharged from any duty to communicate such information to Defendants:

> 22. **Inducement of Lender.** This Guaranty is given at the instance and request of Borrower in order to induce Lender to make available to Borrower certain financial accommodations which constitute a portion of the Indebtedness. Guarantor acknowledges and agrees that Lender has acted in reliance upon this Guaranty in making such financial accommodations available to Borrower. Guarantor hereby represents and warrants that Guarantor is and will continue to be fully informed about all aspects of the financial condition and business affairs of Borrower, and any other guarantor of the Indebtedness, that Guarantor deems relevant to the obligation of Guarantor hereunder, and Guarantor hereby waives and fully discharges Lender from any and all obligations to communicate to Guarantor any information whatsoever regarding the Indebtedness, Borrower, or the financial condition, business affairs or otherwise of Borrower or any other guarantor of the Indebtedness. Guarantor further acknowledges that in agreeing to make the Loan to Borrower, Lender has relied on the financial statement of Guarantor attached hereto as <u>Exhibit 1</u> ("Financial Statement"), and Guarantor represents and warrants that the Financial Statement is true and correct.

(ECF 1-1 at 47, § 22.) In other words, Defendants told LREP in the Guaranty that they were "fully informed" about the financial status of the borrower and were not relying on LREP to educate them. Now that they are trying to find a way out of their payment obligations, they are alleging that LREP made false representations about the financial status of borrower and borrower's property. Defendants have already agreed that they do not have a right to rely on those representations and that instead they were "fully

12

informed" of the financial information about borrower they deemed important. Consequently, the Court should find that Defendants cannot prevail on their fraud claim for this separate reason.

It is true that, in general, a broad disclaimer of earlier representations in an integration clause will not prevent a claim for fraudulent concealment because "the parol evidence rule does not bar evidence of fraud in the inducement of a contract." *Formento v. Encanto Bus. Park*, 744 P.2d 22, 26 (Ariz. Ct. App. 1987). This is not an integration clause, however; that clause is § 18 of the Guaranty ("Entire Agreement, Amendments"). (ECF 1-1 at 39, § 18.) Section 22 is a specific promise that the guarantor is "fully informed" of the information about the borrower's financial status it finds pertinent and it "fully discharges" LREP from providing that information. (*Id.* § 22.)

The distinction between a general integration clause and a specific promise about particular information is important. Courts frequently now enforce so-called "no-reliance" clauses when a party makes a specific promise that it has not relied on a particular representation of the other party. For example, under New York law, a fraud claim will not survive "where the substance of the disclaimer provisions tracks the substance of the alleged misrepresentations, notwithstanding semantical discrepancies." *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 735 (2d Cir. 1984) (also noting with approval earlier case where fraud claim was dismissed when party agreed it had "full familiarity with the financial condition" and disclaimed reliance on other representations). Put in simple terms, a "party to a contract cannot allege that it reasonably relied on a parol representation when, in the same contract, it specifically disclaims reliance upon that particular representation." *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 319 (S.D.N.Y. 2002) (applying New York law) (internal quotation marks and citation omitted).

### 3. Defendants' concealment allegations fail to support their claim because Defendants have not alleged that LREP had a duty to disclose anything.

Defendants' concealment allegations fare no better. To be liable for concealment, the facts must show that LREP actively concealed or took "other action intentionally" to prevent Defendants "from acquiring material information." Restatement (Second) of Torts § 550 & cmts. a-b. In the absence of allegations of active concealment, LREP's liability for nondisclosure of material facts arises "if, but only if," LREP has a duty to disclose. Restatement (Second) of Torts § 551.

Defendants have made no allegations of active concealment. They allege:

- LREP knew that the borrower's representations as to value "were false and withheld that knowledge from" Defendants. (ECF 61 at 7, ¶ 12.)
- LREP "knew full well that [borrower] would not repay the [l]oan" and "[c]oncealed" that fact. (*Id*. at 8, ¶ 24; 11, ¶ 45.a.)
- The borrower directly received significantly less than $4 million in loan proceeds, and LREP "[c]oncealed" that fact. (*Id*. at 8, ¶ 20; 11, ¶ 45.b.)

These are allegations of non-disclosure, not active concealment.

Consequently, to rely on the "concealment" allegations, Defendants must establish that LREP had a duty to disclose the allegedly concealed information to the Defendants under Restatement § 551. *See Gould*, 860 F. Supp. 2d at 989 (When "there are no facts alleged to show that Defendant actively concealed" material information, the fraudulent inducement claim is "limited to simple nondisclosure and necessarily require[s] a duty to disclose.").

The Restatement explains when that duty arises in the guarantor-lender relationship. *See* Restatement (Third) of Suretyship & Guaranty § 12(3) & cmt. *f*. Under § 12(3), a lender may have a duty to disclose to a guarantor if the lender/obligee:

(a)  knows facts unknown to the secondary obligor that materially increase the risk beyond that which the obligee has reason to believe the secondary obligor intends to assume; and

(b)  has reason to believe that these facts are unknown to the secondary obligor; and

14

(c) has a reasonable opportunity to communicate them to the secondary obligor.

Restatement (Third) of Suretyship & Guaranty § 12(3). Comment f to that section includes important limitations on this duty: § 12(3) "places no burden on the obligee to investigate for the benefit of the secondary obligor. Nor does it require the obligee to take any particular steps to ascertain whether the secondary obligor is acquainted with facts that the obligee may reasonably believe are known to both of them."

Aside from asserting conclusions without related factual allegations (LREP "knew" that Defendants "would and did believe the misrepresentations"), the counterclaim is devoid of anything approaching facts which would give rise to a duty to disclose here. There are no allegations about what LREP would know about the level of risk Defendants intended to take; no allegations establishing that LREP had a "reason to believe" any facts about borrower's financial status were "unknown to the secondary obligor"; and no allegations about whether LREP had an opportunity to communicate these supposedly concealed facts. Indeed, the record is quite the opposite: Defendants agreed that they were "fully informed" of the financial status of the borrower and that they fully discharged LREP from having to provide them with that information. (ECF 1-1 at 39, § 22.) In sum, the allegations based on concealment are not valid grounds for Defendants' fraud counterclaim.

**4.   Defendants' fraud claim is generic and non-specific, requiring dismissal under Rule 9(b).**

In addition to the many fatal legal flaws that require dismissal with prejudice, Defendants' fraud claim also merits dismissal because it is so generic and lacking in necessary detail that it violates Rule 9(b).

Rule 9(b) requires that fraud claims be stated with particularity. Fed. R. Civ. P. 9(b). This requires a claimant to allege "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Ceigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted). To meet that burden, the

15

claimant "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Gould*, 860 F. Supp. 2d at 988 (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

Defendants' allegations fail to meet this standard. As discussed above, the allegations related to the two concealment allegations are extremely thin. Aside from baldly asserting that LREP "concealed" that it did not expect the borrower to repay the loan, there is essentially nothing in the complaint establishing how LREP knew this, how LREP concealed that information from Defendants, or how LREP had a duty to disclose the information. Indeed, all the counterclaim alleges on this front is that "LREP had no expectation that [the borrower] would actually repay the [l]oan. In fact, LREP knew full well that [the borrower] would not repay the [l]oan." (ECF 61 at 8, ¶ 24.) That set of allegations gives LREP essentially nothing to go on and is not "specific enough . . . they can defend against the charge" without just denying that LREP did anything wrong. *Vess*, 317 F.3d at 1106 (alterations, and citation omitted).

The allegations are also impermissibly vague and generic about the alleged representations made regarding the value of the Property. Defendants' most specific allegation is that Ms. Blandini, a representative of LREP, "represented" "that the Property was worth as much as $27 million, and was conservatively worth at least $10 million." (ECF 61 at 7, ¶ 16.) But what exactly did she say, where did she say it, and to whom? There are no facts alleged establishing that Ms. Blandini (or LREP generally) knew this supposed representation was false (other than a generic assertion that "LREP knew" (*id.* ¶12)).

The fraudulent inducement claim should be dismissed with prejudice for any number of reasons discussed above. Short of that, the Court should dismiss the counterclaim without prejudice for failure to comply with Rule 9(b).

Dated this 10th day of August, 2018.

                                OSBORN MALEDON, P.A.

                                By s/ Joseph N. Roth
                                   Warren J. Stapleton
                                   Joseph N. Roth
                                   2929 N. Central Avenue, 21st Floor
                                   Phoenix, Arizona 85012

                                McCASKILL LAW & ADVOCACY, PLLC
                                Randy A. McCaskill
                                P. O. Box 13684
                                Scottsdale, Arizona  85267-3684

                                Attorneys for Plaintiff/Counterdefendant

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2018, the attached document was electronically transmitted to the Clerk of the Court using the CM/ECF System which will send notification of such filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

                                        s/ Brenda Wendt